IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**WILLIAM C. HARRISON**                                                    **PLAINTIFF**

**V.**                                                   **NO. 1:24-CV-95-DMB-DAS**

**KIM INTERNATIONAL
MANUFACTURING, L.P.; and
JEWELERS BOARD OF TRADE**                          **DEFENDANTS**

**ORDER**

      After Kim International Manufacturing, L.P., terminated him as a salesman, William C. Harrison sued Kim and Jewelers Board of Trade alleging defamation and intentional interference with business relations. Kim moves to transfer this case to the United States District Court for the Northern District of Texas based on a forum selection clause. Because the forum selection clause encompasses Harrison's claims, transfer will be granted.

**I
Procedural History**

      On May 21, 2024, William C. Harrison filed a complaint in the United States District Court for the Northern District of Mississippi against Kim International Manufacturing, L.P., and Jewelers Board of Trade ("JBT"). Doc. #1. Alleging claims for defamation and intentional interference with business relations following his termination as a salesman by Kim, Harrison seeks compensatory damages against both Kim and JBT, and punitive damages and attorney's fees against Kim only. *Id.* at 4–5.

      On June 28, 2024, Kim filed a motion "pursuant to 28 U.S.C. §1404(a)" requesting transfer of this case to the United States District Court for the Northern District of Texas, Dallas Division, based on a forum selection clause in its sales agreement with Harrison. Doc. #4. Harrison

responded in opposition to transfer on July 11, 2024.[1]  Doc. #11.  After receiving a requested extension, Kim replied on July 25, 2024.[2]  Docs. #14, #18.  On September 19, 2024, the parties stipulated to the dismissal without prejudice of all claims against JBT.  Doc. #24.

## II
## 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  A motion to transfer under § 1404(a) is "the appropriate provision to enforce [a] forum-selection clause."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).  When considering such a motion, "a district court should ordinarily transfer the case to the forum specified in that clause" absent "extraordinary circumstances unrelated to the convenience of the parties."  *Id.*  "[T]he plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Id.* at 63–64.

## III
## Relevant Factual Allegations

William C. Harrison has worked in the jewelry business for over thirty-four years and has

---

[1] JBT consented to transfer eight days later.  *See* Doc. #17 at 2 ("to avoid against the claims at issue in this lawsuit being tried in different courts, JBT … has no objection to and consents to the transfer of all claims asserted in the instant lawsuit, to include those claims made against it, to the United States District Court for the Northern District of Texas").

[2] Kim answered the complaint the same day.  Doc. #20.  Kim filed an amended answer with counterclaims against Harrison on August 15, 2024.  Doc. #21.  On January 17, 2025, due to Harrison's failure to properly allege Kim's citizenship, the Court ordered Harrison, "as the party initially invoking this Court's jurisdiction," and Kim, "as the party invoking this Court's jurisdiction through its counterclaims," to show cause within seven days why their claims should not be dismissed for lack of diversity jurisdiction and if diversity jurisdiction could be established, to amend their respective complaint and counterclaims pursuant to 28 U.S.C. § 1653.  Doc. #26 at 3.  Seven days later, Harrison and Kim each responded to the show cause order, and Kim filed an amended answer with amended counterclaims.  Docs. #27, #28, #29.  Harrison did not amend his complaint; however, his show cause response, by identifying Kim's partners and the citizenship of each, establishes diversity jurisdiction.  Doc. #27 at 1.  Kim's response to the show cause order similarly establishes diversity jurisdiction as to its amended counterclaims.  Doc. #29 at 1; Doc. #29-1 at 1; *see* Doc. #28 at 10–11.

earned a reputation as an honest and successful jewelry salesman. Doc. #1 at 2. Harrison was hired as an Independent Contractor salesman with Kim International Manufacturing, L.P., in January 2016. *Id*. Harrison traveled throughout his sales territory with both live product (real jewelry) and imitation samples. *Id*. He would obtain the live product from Kim and show and sell the product to merchants within his territory. *Id.*

Harrison was Kim's top salesman. *Id*. However, because Kim believed Harrison was planning on terminating his contract and selling jewelry for a competitor, Kim preemptively terminated Harrison on August 11, 2023. *Id*. Kim offered to reinstate Harrison's contract under less favorable terms but Harrison rejected the offer and sought other employment. *Id.* at 3.

On August 21, 2023, Harrison returned all the live product and imitation samples to Kim via UPS. *Id*. Three days later, on August 24, Harrison received an email from Ben Yee, a sales manager from Kim, alleging he had not returned all the live product he obtained from Kim. *Id*. Yee claimed Harrison failed to return $54,000 of product though Harrison had returned all the jewelry and samples taken from Kim not sold to customers. *Id.*

In November 2023, Kim falsely reported to Jewelers Board of Trade, a credit reporting agency specific to the jewelry industry,[3] that Harrison owed it $117,000 so that Harrison's reputation in the jewelry business would be damaged. *Id*. The claim that Harrison had improperly taken jewelry, and was indebted to Kim, was publicized throughout the jewelry business. *Id.* at 4. Though Kim could produce no information showing Harrison took any product, nor that Harrison owed any debt other than advanced draw compensation, JBT maintained the information in its publications and website. *Id.*

---

[3] JBT is member-owned. Doc. #1 at 3. Members of JBT report unpaid debts in the jewelry business and JBT publishes the reported debts throughout the jewelry industry. *Id.* Businesses in the jewelry industry rely on JBT's reports to determine financial standing and trustworthiness. *Id.*

IV
**Analysis**

In requesting transfer of this case, Kim submits that Harrison's "lawsuit … arises out of and relates to a Sales Representative Agreement (the "Agreement") [he] had with [it]" and "[b]ecause the Agreement has a choice of venue provision that does not provide for venue in this Court, this matter is due to be transferred to the federal court in Dallas County, Texas: the United States District Court for the Northern District of Texas, Dallas Division." Doc. #4 at 1–2. Kim argues that because "the Complaint itself recognizes that [Harrison's] claims arise from [his] relationship 'as an Independent Contractor salesman with [it],' a relationship dictated by the terms of the Agreement," "the claims themselves will require an interpretation of the terms of the Agreement to outline how [Harrison], as a Sales Representative, handled the samples/products and whether he did owe monies to [it] pursuant to the Agreement and its compensation structure." Doc. #5 at 4, 5. Specifically, Kim argues Harrison's defamation claim turns on whether he was indebted to it for unreturned product, and Harrison's intentional interference claim turns on whether it falsely claimed Harrison was indebted to it. *Id*. at 5 (citing Doc. #1 at 4). Further, Kim contends interpretation of the Agreement is necessary to its defenses since it "will show that the defamation claim fails as no false statements were made" and that its defense to the intentional interference claim "will utilize [the] terms [of the Agreement] to establish that its acts were done with justifiable cause and were not tortious or unlawful in any way." Doc. #5 at 5–6.

Harrison counters that though "the forum selection clause limits its applications, by its own express terms, to actions to 'enforce or interpret this Agreement,'" "[n]one of [his] claims have anything to do with enforcement or interpretation of the Agreement [because] all of [his] claims accrued after Kim International terminated the agreement." Doc. #11 at PageID 44. Relying on

4

the Southern District of Texas' 2002 opinion in *Psarros v. Avior Shipping, Inc.*,[4] Harrison argues that "all of [his] claims concern Kim['s] tortious acts committed after the contract was terminated" and "[n]o claim will require the Court to enforce or interpret, or even look at, the subject contract." Doc. #12 at PageID 51.

Kim replies that because "[s]uch an argument ignores the factual bases [Harrison] himself describes to support his causes of action, the proof needed for those claims, and the defenses [it has] to those claims, as well as the clear language of the Agreement itself," Harrison ultimately "does not meet his burden of establishing that a transfer to a venue he bargained for is unwarranted and he can establish no extraordinary circumstances to prevent a transfer." Doc. #19 at 4, 6–7. Kim also argues that Harrison's reliance on *Psarros* is misplaced because as noted by the Northern District of Texas' 2004 decision in *Soil Building Systems v. CMI Terex Corp.*,[5] "claims of fraud, misrepresentation and deceptive trade practices all were subject to the forum selection clause." *Id.* at 3.

"[I]n diversity cases, federal law governs the enforceability of forum-selection clauses." *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016). Where the forum selection clause "contains clear language specifying that litigation *must* occur in the specified forum," the clause is mandatory, *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016) (emphasis in original), and the Court must assess the enforceability of the clause, *see Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994) ("[B]efore determining whether a forum selection clause is mandatory and thus enforceable …, we must determine whether we are here presented with a mandatory forum selection clause."). Though there is a "strong presumption in favor of

---

[4] 192 F. Supp. 2d 751 (S.D. Tex. 2002).

[5] Kim cites the case as "2004 U.S. Dist. LEXIS 10663, No. 3:04-CV-0210-G (N.D. Tex. June 9, 2004)." Doc. #19 at 3.

5

enforcing mandatory forum-selection clauses," such clauses "may be overcome by a clear showing that a forum-selection clause is unreasonable." *Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 543 (5th Cir. 2018). Unreasonableness is shown where:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Matthews v. Tidewater, Inc.*, 108 F.4th 361, 367 (5th Cir. 2024) (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997). In seeking to show unreasonableness, the plaintiff "bears a heavy burden of proof." *Id.* (citation omitted).

The forum selection clause in the Agreement relied on by Kim provides:

> This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed and enforced in accordance with the law of the State of Texas. In any dispute or proceeding to enforce or interpret this Agreement, the parties expressly consent to the exclusive jurisdiction of the state and federal courts of Dallas County, Texas and venue shall be proper in Dallas County.

Doc. #4-1 at 6. The parties agree that this forum selection clause is mandatory. *See* Doc. #5 at 3 (Kim's reference to "mandatory forum selection clause of the Sales Representative Agreement."); Doc. #12 at PageID 50 ("[Harrison] concedes the subject provision is a mandatory forum selection clause."). And Harrison does not challenge that the forum selection clause is enforceable[6]—he argues only that the forum selection clause should not be enforced because "none of [his] claims have anything to do with the contract." Doc. #12 at PageID 51. So transfer of this case depends on the Court's evaluation of whether Harrison's claims implicate the forum selection clause.

In *Marinechance Shipping, Ltd. v. Sebastian*, the Fifth Court reviewed the applicability of

---

[6] Harrison does not argue that the Agreement or its forum selection clause was the result of fraud or overreaching, that he would suffer grave inconvenience or unfairness by litigating in the Northern District of Texas, or that the clause would contravene any strong public policy interests of the Court.

a forum selection clause without giving deference to whether the plaintiff's cause of action was based in tort or contract. 143 F.3d 216, 221–22 (5th Cir. 1998). Rather, it "examined the language of the forum-selection clause with a common-sense view of the causes of actions to determine whether the clause was broad enough to cover torts." *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444–45 (5th Cir. 2008) (citing *Marinechance*, 143 F.3d at 222); *see Soil Bldg. Sys. v. CMI Terex Corp.*, No. 3:04-cv-0210, 2004 WL 1283966, at *4 (N.D. Tex. June 9, 2004) ("[I]f the *substance* of [the plaintiff's] claims, stripped of their labels, does not fall within the scope of the [forum selection] clause [], the clause[] cannot apply.") (alterations and emphasis in original) (citation omitted).

Here, the forum selection clause mandates that it applies to "*any dispute* or proceeding to *enforce or interpret* this Agreement." Doc. #4-1 at 6 (emphases added). To the extent Harrison's defamation claim alleges Kim published false statements that he was indebted to Kim for product not returned to it, and he was never indebted to Kim for such because after he was terminated on August 11, 2023, he returned all the live product and imitation samples back to Kim on August 21, 2023, determination of that claim requires at least an interpretation of the Agreement if not also enforcement. When, whether, and to what degree Harrison was obligated to return product to Kim, and how any amount owed to Kim (or Harrison) is determined, are expressly detailed in the Agreement. *See, e.g.*, Doc. #4-1 at 5 ("upon termination of this Agreement, Sales Representative shall … immediately and without demand, pay any and all outstanding amounts owed to the Company and … at his expense, immediately return all property of the Company including, without limitation, all samples … in accordance with Company's instructions);" *id.* ("Sales Representative authorizes the Company to withhold or offset any amounts owed by Sales Representative against any amounts due Sales Representative."); *id.* at 2–3 (articulating how

7

commissions are calculated). Similarly, to the extent Harrison's intentional interference with business relations claim alleges that Kim falsely claimed he was indebted to it and intimated he had converted its product while he was a jewelry salesman, though Kim knew he had not converted its product, boils down to what the Agreement required of both Harrison and Kim. *See Ginter*, 536 F.3d at 445 ("While the clause speaks of covering suits dealing with the enforcement or breach of the contract, the causes of action here all arise out of Belcher's contractual relationship with [the] Ginters. Though their causes of action sound in tort, the Ginters are complaining about the failure of Belcher to fulfill his contractual obligations."). Contrary to Harrison's argument, *when Kim's allegedly tortious acts arose is not determinative of the forum selection clause's application.* Indeed, it seems even post-termination acts by Harrison specified by the Agreement (such as returning the live product and imitation samples) also will need to be considered in resolving his claims. For these reasons, this case will be transferred to the Northern District of Texas, Dallas Division.

## V
## Conclusion

Kim's motion to transfer [4] is **GRANTED**. This case is **TRANSFERRED** to the United States District Court for the Northern District of Texas, Dallas Division.

**SO ORDERED**, this 24th day of February, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**